UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MANE FALETOGO, individually,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SEATTLE, a municipal corporation, OFFICER JARED KELLER ,<br><br>　　　　　Defendants. | NO. 2:19-cv-00247-TSZ<br><br>**AMENDED COMPLAINT FOR DAMAGES: PARENTAL LOSS OF CONSORTIUM RE: THE DEATH OF IOSIA FALETOGO**<br><br>**JURY DEMANDED** |

COMES NOW the Plaintiff by and through his attorneys of record, and alleges as follows:

### I.　　PARTIES

1.　　Plaintiff Mane Faletogo is an adult male and the father of his deceased, Iosia Faletogo.

2.　　Defendants City of Seattle and Officer Jared Keller were responsible as employers, operators, and/or agents in relation to the Seattle Police Department.

### II.　　STATEMENT OF FACTS

3.　　At approximately 5pm on Monday, December 31, 2018, then 36-year-old Iosia Faletogo was pulled over on Highway 99 near 96th Avenue North by officers with the Seattle Police Department.

4. The alleged purpose of the stop was an illegal lane change and the license plate of the vehicle indicated that the owner had a suspended license.

5. Iosia Faletogo ran from the scene, and a chase ensued, eventually involving at least six (6) officers in pursuit.

6. The six (6) officers chased him across the highway and toward a side street, where they tackled him and struggled to arrest Iosia Faletogo.

7. The officers spotted a gun on, and ordered Iosia Faletogo to release the weapon, and pandemonium ensued.

8. "*You're going to get shot!*" the officers can be heard screaming during the chase and physical struggle, followed by a glimpse of Iosia Faletogo's gun on the ground beside him while several officers hovered over him.

9. Another officer shouted "*He's reaching*," to which Iosia Faletogo said in a muffled voice, "*I'm not reaching*."

10. Ultimately, Officer Jared Keller fired his weapon into the back of Iosia Faletogo's head.

11. At the time, Officer Keller was wearing a mandated body camera, which reflected that Iosia Faletogo's hands were entirely free of the weapon at the moment he was shot:

COMPLAINT FOR DAMAGES: PARENTAL LOSS
OF CONSORTIUM RE: THE DEATH
OF IOSIA FALETOGO - 2 of 9

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

[Image: body camera screenshot marked "GRAPHIC CONTENT" with timestamp "2019-01-01 T01:04:15Z" and "AXON BODY 2 X81283464"]

12. The fatal shooting came as a shock not only to Faletogo's family, but to the tight-knit local Samoan community which Faletogo's aunt Tiare Chanel said has been deeply affected by his death. "The shooting has brought a very dark cloud in my family," said Chanel, a Tacoma resident. "It has impacted our community a lot … We feel that we're just going to be part of the count of people of color that's been conflicted with these issues."

13. At the request of Chief Carmen Best, the State Patrol has reportedly opened a criminal investigation into the shooting.

14. Considering past pattern and practices regarding the use of excessive force, the City of Seattle's failure to adequately train Officer Keller reflects a deliberate indifference to Mane Faletogo's constitutional rights.  The City of Seattle's policy or custom of using excessive force is the moving force behind Plaintiff's constitutional violations.

15. Mane Faletogo brings this lawsuit for what appears to be the unnecessary execution of his son.

### III.   FEDERAL LOSS OF CONSORTIUM CLAIM: 42 U.S.C. 1983

16. Ninth Circuit precedent holds that "a parent who claims loss of the companionship and society of his or her child, or vice versa ... has a constitutionally protected

COMPLAINT FOR DAMAGES: PARENTAL LOSS
OF CONSORTIUM RE: THE DEATH
OF IOSIA FALETOGO - 3 of 9

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

liberty interest under the Fourteenth Amendment in the companionship and society of his or her child ....”[1]  This is true even where the deprivation is incidental to the state's acts.[2]  Official conduct that "shocks the conscience" in depriving parents of that interest is cognizable as a violation of due process.[3]  Where "actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience."[4]  On the other hand, "where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives."[5]

17.     Under this federal law, Mane Faletogo has a cause of action for the deprivation associated with the loss of his adult son, Iosia Faletogo.  Pursuant to the claims recognized at federal common law stemming from the substantive due process rights under the Fourteenth Amendment, Mane Faletogo hereby brings such a claim.  At present, this federal lawsuit *does not* include any claims derived by the Estate of Iosia Faletogo or any of the other beneficiaries under state law. This claim also includes a cause of action for a pattern, practice, and failure of training on the part of the City of Seattle leading up to this wrongful death.  It is well documented that the City of Seattle has a pattern and practice of the use of excessive force. Multiple questionable shootings have occurred over the preceding years.  In this situation, the use of lethal force was not necessary, and full de-escalation was never attempted.

---

[1] *Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir.1991) (citing *Strandberg v. City of Helena,* 791 F.2d 744, 748 (9th Cir.1986); *Kelson v. City of Springfield,* 767 F.2d 651, 653–55 (9th Cir.1985)); *see also Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 371 (9th Cir.1998) (noting that plaintiffs "may assert a Fourteenth Amendment claim based on the related deprivation of their liberty interest arising out of their relationship with [their deceased son]").

[2] *See Moreland,* 159 F.3d at 371.

[3] *Wilkinson v. Torres,* 610 F.3d 546, 555 (9th Cir.2010) (citations omitted).

[4] *Id.*

[5] *Id.*

COMPLAINT FOR DAMAGES: PARENTAL LOSS
OF CONSORTIUM RE: THE DEATH
OF IOSIA FALETOGO - 4 of 9

CONNELLY LAW OFFICES, PLLC
2301 North 30th Street
Tacoma, WA 98403
(253) 593-5100 Phone - (253) 593-0380 Fax

18. Plaintiff alleges a cause of action for pattern, practice, and failure of training on the part of the City of Seattle leading up to this wrongful death. There is a well-documented pattern and practice on the use of excessive force, to include multiple shootings over the preceding years. Such well-documented concerns are properly incorporated into the Complaint by reference and include the following:

1. An investigation by the United States Department of Justice Civil Rights Division in December of 2011 found "a pattern or practice of unconstitutional violations regarding the use of force that result from structural problems as well as serious concerns about biased policing.

2. "A pattern of excessive force exists as a result of a subset of officers who use force improperly, and is caused by a number of systematic deficiencies that exist in spite of SPD's recent reform efforts.

3. Regarding use of force, the Department of Justice found that the Seattle Police Department "engages in a pattern or practice of unnecessary or excessive force, in violation of the Fourth Amendment to the United States Constitution and Section 14141." The Department of Justice based this finding, in relevant part, on the following:

    a. When SPD officers use excessive force, they do so in an unconstitutional manner nearly 20% of the time.

    b. SPD officers escalate situations and use unnecessary or excessive force when arresting individuals for minor offenses.

    c. Multiple SPD officers at a time use unnecessary or excessive force together against a single subject. Of the excessive use of force incidents identified, 61% of the cases involved more than one officer.

4. The Department of Justice determined that the pattern or practice of unnecessary or excessive force "is the product of inadequate policy, training and supervision. SPD fails: (1) to properly monitor or investigate the use of force; (2) to implement adequate policies on the proper use of various force weapons; and (3) to adequately train its officers on the use of force, particularly the appropriate use of various force weapons."

5. The Department of Justice found that SPD's "vague Use of Force policy and inadequate training encourage pervasive underreporting and render the Department's statistics on its use of force incomplete."

19. In finding that the SPD engaged in a pattern or practice of unnecessary or excessive force in violation of the Fourth Amendment to the United States Constitution, the Department of Justice carefully examined hundreds of SPD use of force incidents and found that approximately 20% of incidents used unnecessary or excessive use of force. The deficiencies the Department of Justice identified that contributed to the pattern and practice of excessive force within the SPD include the failure to report use of force, the failure to develop adequate policies and training relating to specific force weapons, inadequate supervision of use of force, inadequate verbal de-escalation training, Garrity Protections, and the failure to provide necessary accountability.

20. As a result of this 2011 investigation, the Department of Justice recommended, among others, the following remedial measures regarding use of force:

1. SPD should revise the Use of Force policy to clarify that officers must report any use of force above un-resisted handcuffing, including the active pointing of firearms.

2. SPD should develop and implement a use of force policy that includes a specific force policy for each and every weapon available to SPD officers. These policies should clearly define and describe when, how, and how much force is appropriate, and when such force will be considered deadly force.

21. As a result of these findings, the Seattle Police Department entered into an agreement with the Department of Justice to reform the SPD's deficiencies in training, policies, and oversight with regard to the use of force. This became a Consent Decree as ordered by United States District Judge James Robart. As of April 6th, 2017, Judge James Robart found the Seattle Police Department to be in initial compliance, but the City of Seattle then entered into a two-year monitoring period in which those reforms needed to be maintained. The Decree outlined several principles that SPD needed to reflect in revised "use of force policies, procedures and/or training" including, in relevant part, the following:

1. Officers should use de-escalation techniques, when appropriate and feasible, in order to reduce the need for force.

2. …Officers should de-escalate the use of force as resistance decreases, while staying in control as safety permits.

3. The number of officers on scene may increase the available force options and may increase the ability to reduce overall force used.

4. Officers should be trained that a hard strike to the head with any impact weapon, including a baton, could result in death and such strikes should be consistent with policy and training.

5. Officers normally should not use reportable force against handcuffed or otherwise restrained subjects unless necessary or reasonable under the circumstances to stop an assault, escape or as necessary to fulfill other legitimate law enforcement objectives.

22. Further, the Decree required that all officers and supervisors receive substantial training to provide guidance for each specific weapon's use in a manner consistent with the Decree's general force principles. Regarding De-escalation, SPD's force mandates that "when safe and feasible under the totality of circumstances, officers shall attempt to slow down or stabilize the situation so that more time, options and resources are available for incident resolution. The policy provides a non-exhaustive list of approaches and tactics that officers can strategically employ to de-escalate situations including decreasing the exposure to a potential threat by using distance, cover, or concealment and using verbal techniques to gain compliance. These use of force policies were implemented on January 1, 2014.

23. Defendant City of Seattle plainly violated the terms of the Decree and its de-escalation policies with respect to the force used against Iosa Faletogo.  Without using any de-escalation tactics, Officer Keller needlessly shot Iosa Faletogo at point blank range in the back of the head, knowing that such force was likely to cause death.  Plaintiff, in conjunction with his loss of consortium claim under the Fourteenth Amendment, properly brings Fourth Amendment Morell claims for a pattern, practice, and failure of the City of Seattle in its use of excessive force, especially with respect to de-escalation policies.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a judgment against Defendants:

(a) Awarding Plaintiff general, special, and punitive damages to be proven at trial;

    (b)    Awarding him reasonable attorney's fees and costs as available under law;

    (c)    Awarding him any and all applicable interest on the judgment; and

    (d)    Awarding them him other and further relief as the Court deems just and proper under the circumstances of this case.

DATED this 8th day of May, 2019.

                        CONNELLY LAW OFFICES, PLLC

                        *Lincoln Beauregard*
By _____
    Lincoln C. Beauregard, WSBA No. 32878
    Amanda M. Searle, WSBA No. 42632
    Attorney for Plaintiff Mane Faletogo